IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Basil J. Kyles, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Charles C. Collie, Alex A. Chartier, and Kenny Atkinson, | ) |
| Defendants. | ) |

Civil Action No.  6:12-2761-JMC-KFM

**REPORT OF MAGISTRATE JUDGE**

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment (doc. 38).  The plaintiff is a prisoner at the Federal Correctional Institution at  Edgefield, South Carolina ("FCI Edgefield"), which is part of the Federal Bureau of Prisons ("BOP").  The plaintiff is proceeding *pro se* and seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, this magistrate judge is authorized to review pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the District Court.

The defendants are all employed at FCI Edgefield: Collie is a Captain, Chartier is the Supervisory Chaplain, and Atkinson is the Warden.  The plaintiff contends that his religious beliefs prevent him from working on any Saturday, and he was wrongfully fired by the defendants from his prison job for refusing to work on Saturdays, in violation of

---

[1]In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982).  Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id. See also Osabutey v. Welch*, 857 F.2d 220, 221–223 (4th Cir.1988).

his First Amendment right to practice his religion (doc. 1, comp. p. 5).  The defendants deny that they violated the plaintiff's constitutional rights and contend he was fired for his belligerent conduct towards Captain Collie and his inconsistent performance, and that in any event, the plaintiff had no constitutional right to hold his prison job.

## BACKGROUND

The plaintiff states he is a practicing "Hebrew / Yisraelite (Jew)" (doc. 1, comp. p. 4) and, as relevant here, a Messianic Sabbatarian, observing Saturday as the Sabbath, a day of rest (doc. 1-1, ¶ 18).  He had previously registered  his religious affiliation with the BOP, as reflected in his BOP Program Review Report (doc. 1-6). In his complaint, the plaintiff alleges that he was hired as an inmate orderly on June 28, 2011, assigned to work in defendant Captain Collie's office (doc. 1-1, ¶ 11).  On July 21, 2011, the plaintiff met with Captain Collie in his office regarding the job.  The parties agree that one issue discussed at the meeting was whether the plaintiff could be excused from working on Saturdays on religious grounds (doc. 38, def. m.s.j. pp. 4-6; doc. 48-1, pl. decl. pp. 4-7).  Captain Collie asked that Chaplain Chartier step into the meeting to confirm "if what Mr. Kyles was claiming regarding his need for Saturday's off was legitimate" (doc. 38-2, Collie decl. ¶ 5). It is undisputed that the plaintiff thereafter refused to further participate in the meeting and left the office without permission, disobeying Captain Collie's orders to remain.  It is also undisputed that the plaintiff laid down on his back in the middle of the floor and refused to obey Captain Collie's order to get up and return to his housing unit, causing officers to place him in hand restraints and escort him to the Special Housing Unit ("SHU") (doc. 38-2, Collie decl. ¶ 6; doc. 48-1, pl. decl. pp. 6-7).  The plaintiff admits that as he was being led away to the SHU, he "told all three of these men that I rebuke Satan in the name of Yahshua" (doc. 48-1, pl. decl. p. 7).  Captain Collie states that he fired the plaintiff "on the spot" for his unruly behavior (doc. 38-2, Collie decl. ¶ 7).

The plaintiff filed an informal grievance over his job loss, protesting that he should not have been fired for his unwillingness to work on a Saturday, his Sabbath day (doc. 1-2, informal resolution form).  In the grievance, he did not mention the confrontation he had with Captain Collie and Chaplain Chartier on July 21st.  The plaintiff thereafter

received the following written response denying his grievance: "Spoke with Captain Collie; he stated that I/M Kyles was fired because he couldn't work a job on the Sabbath. Captain Collie stated that he talked to Chaplain Chartier and I/M Kyles doesn't have a valid reason not to work every Saturday" (*id*., p. 1).   Dissatisfied, the plaintiff filed for a remedy through the BOP's formal administrative remedies process and was denied at each level (doc. 38-1, pp. 13-15).  In each written denial form, the plaintiff was advised that his termination was due to "inconsistency" in his performance (*id*.).  Meanwhile, the plaintiff also received a letter dated June 6, 2012, from Tami Cassaro, a supervisory attorney with the BOP, who cited his belligerent behavior and his rebuking of Captain Collie at the July 21st meeting (as well as substandard performance and refusal to work on Saturdays) as the reasons for his termination (doc. 1-3, Cassaro letter).  Ultimately the plaintiff exhausted his administrative remedies and filed this action.

Regarding the orderly job, Captain Collie states in his filed declaration that "[a]ll inmates hired into this job assignment are informed, including Mr. Kyles, that this inmate job requires the orderly be available to work on an as-needed-basis, seven days a week, and at any hour of the day, because this office maintains a 24-hour operation, seven days a week" (doc. 38-2, Collie decl. ¶ 4).  Chaplain Chartier states he "had a conversation with Captain Collie regarding Mr. Kyles' assertion that he needed to have entire Saturdays off.  I explained to Captain Collie that at the time I was not aware of any information that required Mr. Kyles to have entire Saturdays off.  I further explained to Captain Collie that Mr. Kyles' religion observed their Sabbath beginning at sundown on Friday and ending at sundown on Saturday, and that after sundown on Saturday there was nothing prohibiting Mr. Kyles from working" (doc. 38-3, Chartier decl. ¶ 4).  The plaintiff acknowledges that his Sabbath ends on sundown Saturday: "Plaintiff is strictly prohibited from working on the Sabbath [this is all day Saturday, which (for a Hebrew) begins Friday sunset and ends Saturday sunset]" (doc. 48, pl. resp. m.s.j. p. 3).  Captain Collie and Chaplain Chartier both describe the July 21st meeting at which the plaintiff became "loud and belligerent," and Captain Collie asserts that this unruly conduct led to the plaintiff's termination "on the spot." (doc. 38-2, Collie decl. ¶¶ 6-7).  Captain Collie further states that the response on the

3

informal resolution form attributed to him was incorrect: the plaintiff was not fired for refusing to work on Saturdays and that this "erroneous response . . . was corrected in the responses given to Mr. Kyles during the filing of his formal administrative remedy grievances. These responses correctly explained that Mr. Kyles was terminated from his Orderly job assignment due to inconsistency with his performance, and that he will not be rehired" (*id.* ¶ 9).

On March 8, 2013, the defendants filed a motion to dismiss or, in the alternative, for summary judgment (doc. 38). By order filed March 11, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), the plaintiff was advised of the motion to dismiss and summary judgment procedure and the possible consequences if he failed to respond adequately. On April 19, 2013, the plaintiff filed a response in opposition (doc. 43). The defendants then filed a reply on April 29, 2013 (doc. 45). The plaintiff filed a sur-reply on May 14, 2013 (doc. 46). As the parties have presented matters outside the pleadings and these documents have not been excluded by the court, the defendants' motion will be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Prison Job - Constitutional Claims

To state a sustainable claim that the defendants violated the Free Exercise Clause, the plaintiff must demonstrate that the defendants imposed a substantial burden on the practice of his religion. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).  Government officials impose a substantial burden on the free exercise of religion by "'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 187 (quoting *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).  Additionally, the plaintiff must demonstrate that each defendant's actions amount to a "conscious or intentional interference with [the plaintiff's] free exercise rights." *Id.* at 201.  The plaintiff has failed to show that substantial pressure was applied on him to work during his observation of the Sabbath.  There is nothing in the record before the court showing that the defendants required the plaintiff to work at all and certainly nothing to show that the they required him to work this particular job, so as to interfere with his religious observations.  It is well established that inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison. *Johnson v. Knable*, No. 88-7729, 1988 WL 119136, at *1 (4th Cir. Oct. 31, 1988); *Jackson v. LaManna*, C.A. No. 6:06-2812-GRA-WMC, 2007 WL 1862371, at *5 (D.S.C. 2007), *R&R adopted by* 2007 WL 1862529 (D.S.C.

June 26, 2007). Based upon the foregoing, the plaintiff has failed to make out a valid Free Exercise Clause violation against the defendants.

   While an inmate has no constitutional right to a particular prison job, he does enjoy constitutional protections under the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment against unconstitutional discrimination in regard to the job. *See Bentley v. Beck*, 625 F.2d 70, 70-71 (5th Cir. 1980) (stating that prisoner's allegation that his application of position of kitchen orderly was denied solely because of his race stated a claim for violation of his constitutional right to be free from racial discrimination); *Rivers v. Royster*, 360 F.2d 592, 594 (4th Cir. 1966) (prison superintendent may not resort to acts of racial discrimination in the administration of the prison). A prisoner seeking to establish a violation of the Equal Protection Clause must prove that discriminatory purpose is a motivating factor in the decision made by the prison official. If this is established, then the prison official must prove that the same decision would have resulted even had the impermissible purpose not been considered. *See Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 270-71 n.21 (1977). Following this two-step analysis, the court notes that the plaintiff has met the first step in identifying a discriminatory purpose in his firing by presenting the response to his informal resolution request (doc. 38-1, p. 4). This response reads in pertinent part that the plaintiff "was fired because he couldn't work a job the Sabbath. Capt. Collie stated that he talked to Chaplain Chartier and [the plaintiff] doesn't have a valid reason not to work every Saturday" (*id.*). Taken alone, this response indicates that the plaintiff's religious beliefs were a motivating factor in his termination. However, the inquiry does not end there; under step two of the *Arlington Heights* analysis, the court must consider whether the plaintiff would have been fired even had the impermissible purpose (the plaintiff's inability to work on the Sabbath) not been considered. Here the plaintiff's claim fails. The record shows, and the plaintiff admits, that he had a confrontation with Captain Collie and Chaplain Chartier at the July 21st meeting, that he left the meeting without permission, disobeyed Captain Collie's orders to remain, and rebuked the defendants and other officers who had to restrain him before he was placed in the SHU. Captain Collie testifies that he fired the plaintiff "on the

spot" for his unruly conduct, and the plaintiff admits as much on his Informal Resolution Form: "I asked Captain Collie for my job back on August 2, 2011, when he was releasing me out of SHU, for disobeying an order" (doc. 38-1, p. 4, ¶ 2 - Efforts).  Based upon this uncontested record, the defendants have presented the necessary evidence to show that the plaintiff's belligerent conduct alone was sufficient to justify his termination, regardless of whether he was available to work on Saturdays.

The plaintiff argues that the response he received to his informal resolution request establishes unconstitutional conduct and thus trumps any other legitimate reason for his termination.  However, Captain Collie makes clear that he considered the response to be erroneous, and the plaintiff was advised on subsequent notices and in Ms. Cassaro's letter that his firing was based on his inconsistent performance, which included his July 21st conduct.  As the defendants have presented uncontested evidence showing that the same decision would have resulted even had the impermissible purpose not been considered, summary judgment is appropriate on this claim.

### Supervisory Liability

Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The plaintiff makes no specific allegations against Warden Atkinson, but says he is "equally liable along with his associates, because this matter was brought to his attention, and he sided along with his associates' actions" (doc. 1, comp. p. 6).   This general allegation is clearly insufficient to comply with Rule 8, as it does not put this defendant on fair notice of what he each allegedly did to violate the plaintiff's constitutional rights nor how he could be held liable.   "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Lewis v. Lappin,* No. 3:10cv426, 2011 WL 2414418, at *2 (E.D. Va. June 13, 2011) (citation

7

omitted). *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

To the extent the plaintiff seeks to hold Warden Atkinson liable in his supervisory capacity, the doctrine of respondeat superior generally is inapplicable to Section 1983 or *Bivens* suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to make the required showing here. Accordingly, Warden Atkinson is entitled to summary judgment.

### *Qualified Immunity*

The defendants further argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). As discussed above, the plaintiff has

8

failed to show that the defendants violated his constitutional rights. Therefore, the defendants are entitled to the protections afforded by the doctrine of qualified immunity.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 38) be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

January 17, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).